UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **MICHAEL LEON COLLINS,** ) <br> ) <br> Plaintiff, ) <br> ) <br> v. ) <br> ) <br> **CAROLYN W. COLVIN**, ) <br> Acting Commissioner of Social Security, ) <br> ) <br> Defendant. ) <br> _____) | Case No. 3:15-cv-0062-MC <br><br> **OPINION AND ORDER** |

Richard A. Sly, 610 S.W. Broadway Ste. 405, Portland, OR 97205; Linda S. Ziskin, P.O. Box 753833, Las Vegas, NV 89136. Attorneys for Plaintiff.

Billy J. Williams, United States Attorney, and Janice E. Hebert, Assistant United States Attorney, United States Attorney's Office, District of Oregon, 1000 S.W. Third Avenue, Suite 600, Portland, OR 97204-2902; L. Jamala Edwards, Special Assistant United States Attorney, Office of the General Counsel, Social Security Administration, 701 Fifth Avenue, Suite 2900 M/S 221A, Seattle, WA 98104-7075. Attorneys for Defendant.

**McSHANE, District Judge**.

Michael Leon Collins ("plaintiff") seeks judicial review of the final decision of the

Commissioner of the Social Security Administration ("Commissioner") denying his application

for Disability Insurance Benefits ("DIB").  Because the Commissioner's decision is supported by substantial evidence, the decision is AFFIRMED.

## I.     BACKGROUND

### A.    The Application

Born in June, 1978, plaintiff was 35 years old on November 14, 2009, his alleged onset date.  Tr. 16, 185.  He completed one year of college and has past relevant work as a call center operator and as a receiving clerk.  Tr. 211.  He alleges disability due to juvenile-onset Type I diabetes mellitus with attendant gastric and renal complications, culminating in end-stage renal disease.  Tr. 22, 97, 107, 210.

Plaintiff filed his application for DIB on December 31, 2009, alleging disability as of November 14, 2009.  Tr. 209-18.  Plaintiff submitted a separate application for SSI that was granted in 2012, with an established onset date of March 29, 2012.  After the Commissioner denied his DIB application initially and upon reconsideration, plaintiff requested a hearing before an Administrative Law Judge ("ALJ").  Tr. 153.  An administrative hearing was held on plaintiff's DIB claim on July 30, 2013.  Tr. 35-54.

On August 12, 2013, ALJ Glenn Meyers issued a written decision finding plaintiff not to be disabled.  Tr. 16-29.  The Appeals Council denied plaintiff's subsequent request for review on November 24, 2014, and the ALJ's decision became the final decision of the Commissioner.  Tr. 1-6.  This appeal followed.

### B.    The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]"  42

U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.,* 648 F.3d 721, 724 (9th Cir. 2011); *see also* 20 20 C.F.R. § 404.1520; *Bowen v. Yuckert*, 482 U.S. 137, 140 (1987). Each step is potentially dispositive. 20 C.F.R. § 404.1520(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity?" 20 C.F.R. § 404.1520(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. § 404.1510. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. § 404.1520(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. § 404.1520(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. § 404.1521(a). This impairment must have lasted or must be expected to last for a continuous period of at least 12 months. 20 C.F.R. § 404.1509. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. § 404.1520(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds beyond step three. At that point, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" ("RFC"). This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §

        404.1520(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5.     Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. §§ 404.1520(a)(4)(v); 404.1560(c). If the claimant cannot perform such work, he or she is disabled. *Id.*

*See also Bustamante v. Massanari,* 262 F.3d 949, 954 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 953; *see also Tackett v. Apfel,* 180 F.3d 1094, 1100 (9th Cir. 1999); *Yuckert*, 482 U.S. at 140-41. The Commissioner bears the burden of proof at step five. *Tackett,* 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. § 404.1566 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. § 404.1520(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante,* 262 F.3d at 953-54; *Tackett*, 180 F.3d at 1099.

**C.**    **The ALJ's Decision**

The ALJ performed the sequential analysis. At step one, he found that plaintiff had not engaged in substantial gainful activity from his alleged onset date of November 14, 2009 through his date last insured of June 30, 2010. Tr. 22. At step two, the ALJ concluded that plaintiff had the severe impairments of diabetes mellitus and diabetic nephropathy. *Id.* At step three, the ALJ determined that plaintiff did not have an impairment or combination of impairments that met or medically equaled a listed impairment. Tr. 25.

Page 4 – OPINION AND ORDER

The ALJ next assessed plaintiff's residual functional capacity ("RFC") and found that he retains the capacity to perform sedentary work with the following limitations: he can occasionally stoop, crouch, crawl, and kneel; he can occasionally climb ramps or stairs; he cannot climb ladders; and he should avoid workplace hazards. Tr. 25. Proceeding to step four, the ALJ found that plaintiff could perform his past relevant work as a call center operator. Tr. 28. Accordingly, the ALJ found that plaintiff was not disabled between his alleged onset date and his date last insured. *Id.*

## II.    STANDARD OF REVIEW

The district court must affirm the Commissioner's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla but less than a preponderance." *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009). It means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id*.

Where the evidence is susceptible to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the Commissioner. *See Batson v. Comm'r*, 359 F.3d 1190, 1193 (9th Cir. 2004). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)

(internal quotations omitted)).  The reviewing court, however, may not affirm the Commissioner on a ground upon which the Commissioner did not rely.  *Id.*; *see also Bray*, 554 F.3d at 1226.

### III.    DISCUSSION

Plaintiff argues that the Commissioner erred because he (1) failed to develop the medical record and (2) improperly rejected plaintiff's credibility.  For the reasons discussed below, the ALJ's decision is affirmed.

### A.    Failure to Develop the Medical Record

Prior to the filing the application at issue in this case, plaintiff applied for benefits in 2007 and received an unfavorable decision that he did not appeal.  Tr. 55, 58.  Plaintiff argues that the ALJ erred by failing to develop the record by including the medical evidence that was before the ALJ who considered the 2007 application.[1]

As an initial matter, the Court finds that the ALJ did not reopen the decision denying the 2007 application for benefits, and this Court cannot review that decision.  *Krumpelman v. Heckler,* 767 F.2d 586, 588 (9th Cir. 1985) (the Commissioner's decision "not to re-open a previously adjudicated claim for social security benefits is purely discretionary and is therefore not considered a final decision" within the meaning of the Act); *Lester v. Chater*, 81 F.3d 821, 827 (9th Cir. 1996).

The ALJ has "broad latitude" in deciding whether to further develop the record, *Reed v. Massanari*, 270 F.3d 838, 842 (9th Cir. 2001), and the ALJ's duty to further develop the record is triggered by "[a]mbiguous evidence, or the ALJ's own finding that the record is inadequate to all for proper evaluation of the evidence."  *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001).  Here, the ALJ considered plaintiff's request to add exhibits from the 2007 application to the record..  Tr. 731-914.  Although he included two of the exhibits, the ALJ explained that

---

[1] A portion of that record appears in the administrative record for this case at Tr. 739-914.

Page 6 – OPINION AND ORDER

inclusion of the entire 2007 medical file pertained to a prior adjudicated period and would not have changed his decision. Tr. 19-20. The Court finds that the ALJ did not err in his refusal to further develop the record. As discussed below, the ALJ properly considered the medical evidence that pertained to the plaintiff's allegation of disability during the relevant period and was not presented with any ambiguity or inadequacy with respect to the evidence relied upon. *Tonapetyan*, 242 F.3d 1150.

Plaintiff contends that the ALJ erred because he failed at step two to find that he meets Listing 6.02, Impairment of Renal Function.[2] Subcategory C[3] provides that to prove disability, the claimant must show impairment of renal function due to any chronic renal disease expected to last 12 months, with "[c]hronic hemodialysis or peritoneal dialysis necessitated by irreversible renal failure." The claimant must also show "persistent" creatinine level of 4 or greater for at least 3 months. Persistent is defined as at, "or expected to be at," a certain level for at least 12 months. In addition, a claimant must show one of the following:

> 1. Renal osteodystrophy … manifested by severe bone pain and appropriate medically acceptable imaging demonstrating abnormalities such as osteitis fibrosa, significant osteoporosis, osteomalacia, or pathologic fractures; or
> 2. Persistent motor or sensory neuropathy (see 6.00E4); or
> 3. Persistent fluid overload syndrome with:
>     a. Diastolic hypertension greater than or equal to diastolic blood pressure of 110 mm Hg; or
>     b. Persistent signs of vascular congestion despite prescribed therapy (see 6.00B5); or
> 4. Persistent anorexia with weight loss determined by body mass index (BMI) of less than 18.0, calculated on at least two evaluations at least 30 days apart within a consecutive 6-month period (see 5.00G2).

SSI Listing 6.02C.

---

[2] In 2012, plaintiff filed an application for SSI that was granted based on a finding that he meets Listing 6.02. Tr. 64, 85, 94-96, 127.
[3] It is clear the plaintiff did not meet Subcategories A or B at the time of the ALJ's decision.

Page 7 – OPINION AND ORDER

The ALJ considered the medical evidence and found plaintiff did not meet the criteria for Listing 6.02C. Tr. 25. In support of this finding, the ALJ noted that plaintiff's creatinine level was 3.4 in May, 2010 and reached 4 on June 24, 2010. Tr. 263, 265, 269, 291, 294, 297. By August 2010, plaintiff's creatinine level had declined to less than 3.68. Tr. 294. Thus, the medical records from the relevant period do not support a finding that plaintiff's creatinine level persisted at listing level severity. The ALJ concluded that plaintiff did not meet or equal Listing 6.02C through his date last insured. Tr. 25.

In support of his argument that he meets Listing 6.02, plaintiff cites record evidence of anorexia and references to his thinness. Tr. 294, 330, 360, 390, 429, 434, 443, 756, 791, 794-95. The ALJ's finding that the record did not support anorexia during the relevant period, however, is supported by substantial evidence. Plaintiff was 5 feet tall and weighed 130 pounds, giving him a Body Mass Index of 19.2, which does not meet the weight requirement for Listing 6.02. Tr. 210. Plaintiff's endocrinologist also reported that plaintiff's weight fluctuated between 137 and 152 pounds. Tr. 274. On this record, it was reasonable for the ALJ to find that plaintiff did not meet the weight requirement for Listing 6.02. *Batson*, 359 F.3d at 1193. Moreover, because plaintiff did not meet the criterion regarding creatinine levels, anorexia was not relevant to the ultimate disability determination. Even if the ALJ erred in his consideration of plaintiff's anorexia, it was harmless. *Molina v. Astrue*, 674 F.3d 1104, 1117 (9th Cir. 2012) (an ALJ's error is harmless if it is inconsequential to the ultimate nondisability determination).

Plaintiff also argues that the issue of plaintiff's gastric condition needs further development due to an "apparent misdiagnosis." The Court rejects this argument. Here, a gastric emptying study in 2012 found that plaintiff did not have gastroparesis, and he had no hospital visits for ketoacidosis or related symptoms during the relevant period. Tr. 715-30. The

record for the relevant period is therefore not ambiguous as to the issue of gastroparesis, and the ALJ was not required to further develop the record on this issue. *See Tonapetyan*, 242 F.3d at 1150.

In sum, the ALJ's finding that plaintiff did not meet a listed impairment is supported by substantial evidence in the record and is therefore affirmed. *Batson*, 359 F.3d at 1193. Because substantial evidence was available to support the ALJ's decision, he was not required to further develop the record in his disability analysis. *Tonapetyan*, 242 F.3d 1150.

**B.     Plaintiff's Credibility**

Plaintiff also argues that the ALJ erred by rejecting his subjective symptom testimony. There is a two-step process for evaluating the credibility of a claimant's own testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009) (citing *Lingenfelter v. Astrue*, 504 F.3d 1028, 1035–36 (9th Cir. 2007)). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter*, 504 F.3d at 1036 (quotation marks and citation omitted). When doing so, the claimant "need not show that her impairment could reasonably be expected to cause the severity of the symptom she has alleged; she need only show that it could reasonably have caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

Second, "if the claimant meets this first test, and there is no evidence of malingering, 'the ALJ can reject the claimant's testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting *Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he

must state which pain testimony is not credible and what evidence suggests the complaints are not credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing *Bunnell v. Sullivan*, 947 F.2d 341, 345–46 (9th Cir. 1991)).

The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations. *Smolen*, 80 F.3d at 1284. The Commissioner recommends assessing the claimant's daily activities; the location, duration, frequency, and intensity of the individual's pain or other symptoms; factors that precipitate and aggravate the symptoms; the type, dosage, effectiveness, and side effects of any medication the individual takes or has taken to alleviate pain or other symptoms; treatment, other than medication, the individual receives or has received for relief of pain or other symptoms; and any measures other than treatment the individual uses or has used to relieve pain or other symptoms. *See* SSR 96–7p, 1996 WL 374186 (Jul. 2, 1996).

Further, the Ninth Circuit has said that an ALJ "may consider ... ordinary techniques of credibility evaluation, such as the claimant's reputation for lying, prior inconsistent statements concerning the symptoms, ... other testimony by the claimant that appears less than candid [, and] unexplained or inadequately explained failure to seek treatment or to follow a prescribed course of treatment." *Smolen*, 80 F.3d at 1284. The ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883. The ALJ's credibility decision may be

Page 10 – OPINION AND ORDER

upheld even if not all of the ALJ's reasons for rejecting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197.

At the hearing, plaintiff testified that he was completely disabled by his impairments, which included nausea and vomiting so severe that it caused him to miss work for more than half of the days in a month. Tr. 48-49.

The ALJ rejected plaintiff's testimony as to the disabling nature of his limitations due to his noncompliance with and failure to seek treatment. Tr. 27. Unexplained or inadequately explained failure to seek treatment is a relevant credibility consideration. *Orn*, 495 F.3d at 636. The ALJ may also reject a claimant's credibility due to failure to comply with treatment recommendations. *Fair v. Bowen*, 885 F.2d 597, 603 (9th Cir. 1989). Here, while financial constraints were a significant obstacle to treatment, plaintiff's noncompliance and failure to seek treatment support the ALJ's credibility determination. For example, plaintiff testified that treating endocrinologist Nicholas Clarke, M.D. did not charge for his services. Tr. 26, 51. Nevertheless, plaintiff rarely visited Dr. Clarke during the relevant period. *See, e.g.,* Tr. 261-75. Plaintiff was also aware of opportunities to access free or low-cost medical care. While Dr. Clarke noted that plaintiff was unable to check his blood sugars regularly due to cost, Dr. Clarke advised plaintiff to get on Oregon Health Plan in order to properly comply with his diabetes treatment. Tr. 261-75. Despite this recommendation, plaintiff did not attain insurance. Tr. 51-52, 726. On this record, plaintiff's noncompliance and failure to seek appropriate treatment were clear and convincing reasons for the ALJ to reject his credibility. *Orn*, 495 F.3d at 636; *Fair*, 885 F.2d at 603.

The ALJ also found that plaintiff's work activity during the relevant period was at odds with his testimony of debilitating limitations. Tr. 27. Daily activities that are inconsistent with

Page 11 – OPINION AND ORDER

alleged symptoms are a relevant credibility consideration. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). Here, plaintiff performed work in 2009 and 2010 for a friend at the Hillsboro Air Show which involved setting up and taking down tents, taking inventory, light cleaning, and retrieving supplies. Tr. 22, 219, 254. At the hearing, plaintiff testified that he completed some college in 2011. Tr. 48, 390. Plaintiff's work activity during the relevant period adds some weight to the ALJ's credibility determination. *Rollins*, 261 F.3d at 857.

## IV.     CONCLUSION

The Commissioner's decision that plaintiff is not disabled was supported by substantial evidence in the record and is therefore AFFIRMED.

DATED this 28th day of April, 2016.

                                         /s/ Michael McShane  
                                         Michael McShane  
                                         United States District Judge